IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

TRAVIS CLONINGER,

                Plaintiff,

v.                                     CIVIL ACTION NO.   3:20-0170

CORRECTIONAL OFFICER HARVEY;
CORRECTIONAL OFFICER ROBINSON;
CORRECTIONAL OFFICER JERRY THEISSEN, JR.;
PRIMECARE MEDICAL, INC.;
MEDICAL ASSISTANT LYDIA MCNEELY;
NURSE LISA SUMMERS;
NURSE SUSIE CHRISTIAN;
JOHN/JANE DOE CORRECTIONAL OFFICERS; and
JOHN/JANE DOE MEDICAL PROVIDERS,

                Defendants.

### MEMORANDUM OPINION AND ORDER

In this case, plaintiff Travis Cloninger challenges his treatment while detained for approximately twenty-one days at Western Regional Jail in Cabell County, West Virginia. Defendant correctional officers Harvey, Robinson, and Thiessen now move to dismiss the three claims against them. ECF No. 11. For the reasons below, the Court **GRANTS IN PART** their motion as to Counts One and Three but **DENIES IN PART** their motion as to Count Two.

### I. BACKGROUND

Cloninger alleges the following facts. He entered custody of Western Regional Jail on June 5, 2019. ECF No. 1 ¶ 15. He was and remains a paraplegic confined to a wheelchair, so he was assigned to housing in Western Regional's medical unit. *Id.* ¶¶ 14–15. The jail provided Cloninger with a wheelchair, but it was too small and did not have footrests, which caused his feet to drag.

*Id.* ¶¶ 20–22. Western Regional also provided Cloninger with a common bunk instead of a hospital bed. *Id.* ¶ 25.

A medical report on June 8 recorded an injury to Cloninger's knee from hitting or rubbing the wall for multiple hours each day, but the jail lacked supplies at the time to fix the problem. *Id.* ¶ 27. A pillow was finally placed between the wall and Cloninger's right knee a week later. *Id.* ¶ 28. Jail personnel noted a green slough draining from his knee, but they did not obtain a culture because they lacked swabs. *Id.* ¶ 29. Cloninger was then transported to the hospital, where he received intravenous antibiotics to treat the infected decubitus ulcerations on his right knee. *Id.* ¶ 30. Cloninger also developed pressure sores while at Western Regional. *Id.* ¶ 31. Care guidelines required turning him every two hours to maintain blood flow and prevent his skin from breaking down, but he sometimes went four or more hours without being turned, which caused the sores to develop. *Id.* ¶¶ 32–33.

On June 7, Cloninger began vomiting and complaining of severe stomach pain. *Id.* ¶ 34. The jail did not provide an emesis basin for him to vomit into until well after the vomiting began. *Id.* ¶ 35. Only a day later did jail personnel note there was vomit on the floor, on Cloninger, and on his mat. *Id.* ¶ 36. He then received a shower. *Id*. His vomit was classified as coffee ground emesis, which indicates the presence of coagulated blood due to gastrointestinal bleeding. *Id.* ¶ 37. Despite the vomiting, emergency medical services were not dispatched until June 9. *Id.* ¶ 38. Until then, Cloninger had to lie for long periods in his bloody vomit. *Id.* ¶ 39. When medical services transported him to the hospital, he was treated in part for systemic inflammatory response syndrome with a urinary tract infection. *Id.* ¶ 40. Tests further indicated erosive esophagitis and a hiatal hernia. *Id*.

After returning to Western Regional on June 16, Cloninger fell out of his bunk onto the cement floor. *Id.* ¶ 41. He experienced tremendous pain, so the jail ordered x-rays. *Id.* ¶ 43. The next day, Cloninger experienced labored breathing and severe neck and back pain, which he rated as ten out of ten. *Id.* ¶¶ 45–46. He also experienced excessive bowel movements that irritated the broken skin on his buttocks. *Id.* ¶ 47. Despite these injuries, Cloninger was not immediately transported to the hospital. *Id.* ¶ 48. Only after this fall, thirteen days into his detention, did the jail provide Cloninger with a hospital bed and mattress. *Id.* ¶¶ 49–50. The following day, Cloninger reported numbness in his fingers and heart palpitations. *Id.* ¶ 51. Five hours after his complaint, an electrocardiogram was performed, which showed supraventricular tachycardia. *Id.* ¶ 53. Emergency medical services then transported Cloninger to the hospital. *Id.* ¶ 54. Medical providers noted abrasions and sores on Cloninger's extremities, and labs indicated he was anemic. *Id.* ¶ 55.

Upon returning to Western Regional on June 19, Cloninger requested a shower. *Id.* ¶ 56. Jail personnel left him in the shower unsupervised and without necessary assistance. *Id.* ¶¶ 57–58. When they returned, they found the wheelchair tipped backwards and Cloninger's head resting against the shower wall. *Id.* ¶ 59. A quarter-sized knot appeared near the back lower part of his skull, and his left ankle was swollen. *Id.* ¶ 60. He also complained of neck and right shoulder pain, spotty vision, and a headache. *Id.* He was transported to the hospital and diagnosed with a closed head injury. *Id.* ¶ 61.

On June 20, Cloninger became diaphoretic and began defecating in his bed. *Id.* ¶¶ 62–64. He moaned in pain due to severe burning in his stomach, chest, and ribs. *Id.* ¶ 65. Western Regional ordered Cloninger to be sent to the emergency room, but emergency medical services did not arrive until approximately five hours later. *Id.* ¶¶ 66–67. Upon arriving, medical personnel recorded: "[Cloninger] is found lying in hospital style bed, no pillows or padding protecting paralyzed,

contracted extremities from resting and rubbing cinderblock wall. Nurse states the patient has been moaning in pain for the past 10 hours, and has only been given Zantac and Protonix." *Id.* ¶ 68. An incident report notes correctional officer Thiessen remarked dismissively that Cloninger was sent to the hospital "for a tummy ache." *Id.* ¶ 70. In response to this comment, the report states, "[t]his can't happen, need to educate staff." *Id.* ¶ 71.

On June 22, Cloninger complained of increased sweating and feeling cold. *Id.* ¶ 73. An assessment recorded that Cloninger had wounds to his anterior right knee, two wounds to his posterior right knee, a wound to his left heel, skin breakdown and a rash from his shoulder blade to buttocks, and warm and clammy skin. *Id.* ¶ 74.

In addition to these incidents, Cloninger complains of inadequate access to medication. He alleges he was prescribed approximately eight medications when he arrived at Western Regional, including Xanax, Gabapentin, and Cymbalta. *Id.* ¶¶ 75–76. However, the jail did not provide these medications. *Id.* ¶ 75. Discontinuing Xanax without proper medical supervision caused diarrhea, loss of appetite, and heart palpitations. *Id.* ¶ 78. Discontinuing Gabapentin caused vomiting and sweating. *Id.* ¶ 80. And, discontinuing Cymbalta caused nausea, diarrhea, vomiting, and hyperhidrosis. *Id.* ¶ 82.

Based on these allegations, Cloninger asserts three claims. Count One is a claim under 42 U.S.C. § 1983 for deliberate indifference to Cloninger's serious medical needs in violation of the Eighth Amendment. *Id.* ¶¶ 84–96. Count Two is a § 1983 claim for deliberate indifference to Cloninger's Eighth Amendment right to decent and humane conditions of confinement. *Id.* ¶¶ 97–104. Lastly, Count Three is a discrimination claim under the Americans with Disabilities Act. *Id.* ¶¶ 105–112. Harvey, Robinson, and Thiessen now move to dismiss the three claims under Federal

-4-

Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. ECF No. 11.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts contained in the statement need not be probable, but the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

## III. DISCUSSION

### A. Count One fails to state a claim against defendants Harvey, Robinson, and Thiessen for deliberate indifference to Cloninger's serious medical needs.

Count One alleges the defendants unconstitutionally acted with deliberate indifference to Cloninger's serious medical needs. ECF No. 1 ¶¶ 84–96. Because Cloninger was a pretrial detainee and not a convicted prisoner, his challenge arises under the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's prohibition against cruel and unusual punishment. *Hill v. Nicodemus*, 979 F.2d 987, 990 (4th Cir. 1992) (citations omitted). However, courts utilize the Eighth Amendment standard to analyze claims brought by pretrial detainees. *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (explaining that pretrial detainees "are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under

the Eighth Amendment," so "deliberate indifference to the serious medical needs of a pretrial detainee violates the due process clause") (citations omitted). To state an Eighth Amendment claim for inadequate medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Such acts or omissions may include inadequate treatment, the intentional denying or delaying of treatment, or the intentional interference with treatment once prescribed. *Id.* at 104– 05.

The deliberate indifference standard contains both objective and subjective elements. *See Farmer v. Brennan*, 511 U.S. 825 (1994). Objectively, a plaintiff must show he or she had a "serious" medical need—one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted). The plaintiff must also show the denial of medical care caused "a serious or significant physical or emotional injury" or "a substantial risk of such serious harm." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citation omitted). The subjective element requires the plaintiff to show "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "[I]t is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citations omitted). If the plaintiff establishes subjective knowledge, an official may avoid liability if he or she "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Harvey, Robinson, and Thiessen do not dispute that Cloninger had serious medical needs. The Complaint claims he was and remains a wheelchair-bound paraplegic, which requires significant medical attention. ECF No. 1 ¶¶ 14, 17; *see LaFaut v. Smith*, 834 F.2d 389, 393–94 (4th Cir. 1987) (holding correctional institution was deliberately indifferent to paraplegic prisoner's medical needs); *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004)*, vacated and superseded,* 449 F.3d 1149 (11th Cir. 2006) ("As a wheelchair-bound paraplegic . . . Miller unquestionably has serious medical needs."). In addition to his pre-existing paraplegia, Cloninger alleges he incurred several injuries and ailments at Western Regional, including: a head wound (ECF No. 1 ¶ 60); right knee damage and infection (*Id.* ¶¶ 27–30); a urinary tract infection, erosive esophagitis, and a hiatal hernia (*Id.* ¶ 40); bloody vomit and stomach pain (*Id.* ¶¶ 34–37); excessive bowel movements causing broken skin (*Id.* ¶ 47); supraventricular tachycardia (*Id.* ¶ 53); and severe burning in his stomach, chest, and ribs (*Id.* ¶ 65). These allegations constitute serious medical needs that demanded appropriate treatment.

Although they concede these serious medical needs, Harvey, Robinson, and Thiessen argue the Complaint does not show deliberate indifference because jail personnel were attentive in their response. ECF No. 12, at 5–7. First, Cloninger was assigned to Western Regional's medical unit, so he could receive appropriate care from the jail's medical provider. ECF No. 1 ¶¶ 8, 15. Second, the Complaint describes several medical examinations and assessments that were performed, including x-rays and an electrocardiogram. *Id.* ¶¶ 23, 29, 37, 43, 53. And third, the jail sent him to the hospital five different times, a significant number considering Cloninger was in the jail's custody for only twenty-one days. *Id.* ¶¶ 30, 38, 54, 61, 67.

Yet, construed liberally in Cloninger's favor, the Complaint contains allegations of inadequate medical care that support finding deliberate indifference. *See De'Lonta v. Johnson*, 708

F.3d 520, 526 (4th Cir. 2013) (explaining that "just because Appellees have provided [Appellant] with *some* treatment . . . it does not follow that they have necessarily provided her with *constitutionally adequate* treatment"). Significantly, Cloninger alleges he did not receive eight prescribed medications, which resulted in serious side effects. ECF No. 1 ¶¶ 75–82; *see Knouse v. Primecare Med. of W. Virginia*, 333 F. Supp. 3d 584, 591 (S.D.W. Va. 2018) (holding plaintiff stated deliberate indifference claim where jail allegedly failed to continue plaintiff's medications). Cloninger also claims the jail did not provide a hospital bed for thirteen days, resulting in his knee rubbing against the concrete wall and becoming infected. ECF No. 1 ¶¶ 27–30, 50. He claims he developed pressure sores from not being turned, and his bunk's lack of protective railings caused him to fall and endure severe pain. *Id.* ¶¶ 31–33, 41–44. And, he alleges that a lack of assistance caused him to fall in the shower and injure his head. *Id.* ¶¶ 56–61. These seemingly foreseeable consequences of not providing a paraplegic detainee with proper bedding and assistance in the shower support finding the defendants "[knew] of and disregard[ed] an excessive risk to [Cloninger's] health and safety." *Farmer*, 511 U.S. at 837. Thiessen's alleged comment that Cloninger went to the hospital "for a tummy ache" and the incident report's alleged note on the "need to educate staff" further suggest jail personnel were dismissive of Cloninger's health. ECF No. 1 ¶¶ 70–71.

The Complaint also alleges instances of delayed access to care that plausibly show deliberate indifference. In *Loe v. Armistead*, the Fourth Circuit held the plaintiff stated an inadequate medical care claim because he allegedly waited eleven hours to see the jail physician and twenty-two hours to go to the hospital for his broken arm. 582 F.2d 1291, 1296 (4th Cir. 1978). The court explained that such an unusually long delay "provides a reasonable basis for the inference that there was deliberate indifference." *Id.* Cloninger alleges even longer delays here. He

claims that despite vomiting blood and complaining of severe stomach pain, Western Regional waited two days to take him to the hospital, where he was diagnosed with a urinary tract infection, erosive esophagitis, and a hiatal hernia. ECF No. 1 ¶¶ 34–40. He also alleges jail personnel waited more than twenty-four hours to take him to the hospital after he fell from his bed, even though he reported his pain as ten out of ten. *Id.* ¶¶ 41–48. According to Cloninger, he was only taken to the hospital once an electrocardiogram showed supraventricular tachycardia. *Id.* ¶¶ 51–54.

Yet, despite the general sufficiency of these allegations, Count One fails to state a claim specifically against Harvey, Robinson, and Thiessen because the Complaint does not allege these defendants committed any of the relevant conduct, except for Thiessen's comment regarding Cloninger's "tummy ache." *See id.* ¶ 70. Aside from a few ambiguous references to "WRJ personnel" and "WRJ officials," the Complaint uses the passive voice to evade specifying the conduct of each defendant. This runs afoul of Federal Rule of Civil Procedure 8(a)(2)'s requirement of a "a short and plain statement of the claim showing that the pleader is entitled to relief" because a complaint that does not specify the allegations against a defendant does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted); *see also Pahls v. Thomas*, 718 F.3d 1210, 1225–26 (10th Cir. 2013) ("When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights 'were violated' will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights."). For this reason, courts often reject claims that do not specify the actions of particular defendants. *E.g., Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) ("The Complaint refers to actions of 'Defendants,' but that is not sufficient to show how Secretary Williams 'might be individually liable for deprivations of [Mr. Brown's] constitutional rights.'");

*Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998) ("[T]he district court's conclusion is infirm because it lumps all of 'these defendants' together despite the fact that each of the defendants had different powers and duties and took different actions with respect to Professor Tonkovich."); *Boykin Anchor Co. v. AT&T Corp.*, No. 5:10-CV-591-FL, 2011 WL 1456388, at *4 (E.D.N.C. Apr. 14, 2011) (dismissing claim because the "plaintiff cannot rely on bare allegations relating to the conduct of 'all defendants' . . . but must identify specific acts or conduct taken by each defendant to state a claim"). Based on a liberal reading of the Complaint, the Court can reasonably link Cloninger's treatment-related allegations to the defendant medical provider and medical staff. But it exceeds the limits of fairness and plausibility for the Court to attribute these allegations to the defendant correctional officers, whose duties generally do not involve the medical treatment of detainees.

The Court therefore grants the Motion to Dismiss as to Count One, but only for defendants Harvey, Robinson, and Thiessen. Cloninger may proceed on Count One against the remaining defendants.

**B. Count Two states a claim for unconstitutional conditions of confinement.**

Count Two alleges the defendants subjected Cloninger to other unconstitutional conditions of confinement. ECF No. 1 ¶¶ 97–104. Specifically, Cloninger bases his claim on the defendants leaving him to lie for extended periods in his own vomit and feces. ECF No. 19, at 10–14. He alleges he had to lie in bloody vomit for much of June 7 through June 9 because the jail failed to timely provide him with an emesis basin to vomit into. ECF No. 1 ¶¶ 34–40. He also alleges inadequate transportation to the toilet often forced him to defecate in his bed and lie in it, including for several hours on June 20. *Id.* ¶¶ 62–68. Cloninger claims his bowel movements and exposure to feces caused the skin on his buttocks to further deteriorate. *Id.* ¶¶ 47, 64.

Like Count One, Count Two arises under the Fourteenth Amendment's Due Process Clause because Cloninger was a pretrial detainee, but the Court looks to the Eighth Amendment standard to analyze his claim. *See Young*, 238 F.3d at 575. To make out a *prima facie* case that conditions of confinement violate the Eighth Amendment, a plaintiff must show "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (citation omitted). The first showing "requires the court to determine whether the deprivation of the basic human need was *objectively* sufficiently serious." *Id.* (citations omitted). A plaintiff must allege more than unpleasant and uncomfortable living conditions, as "only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks and citation omitted). To show such a deprivation, "a prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions, or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal quotation marks and citations omitted). If the plaintiff does not meet this objective standard, the court need not address the second prong's state-of-mind requirement. *Strickler*, 989 F.2d at 1379. If the plaintiff does meet the objective standard, the Court must "determine whether *subjectively* the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotation marks and citations omitted).

This Court recently observed that "the mere smell or presence of human waste is not sufficiently serious to constitute a violation of the Eighth Amendment." *Salmons v. W. Reg'l Jail Auth.*, No. 3:18-1447, 2019 WL 5616916, at *6 (S.D.W. Va. Oct. 30, 2019); *see also Beverati v.*

*Smith*, 120 F.3d 500, 504–05 (4th Cir. 1997) (holding that confining inmates for six months in cells "infested with vermin" and "smeared with human feces and urine" did not violate the Fourteenth Amendment); *Harris v. FNU Connolly*, No. 5:14-CV-128-FDW, 2016 WL 676468, at *5 (W.D.N.C. Feb. 18, 2016)*, aff'd,* 667 F. App'x 408 (4th Cir. 2016) (granting defendants summary judgment where plaintiff alleged holding cell was unsanitary because of a "massive amount of urine, feces, and vomit on both the floor and walls in which the plaintiff was forced to live in for 30 plus days"). However, Cloninger does not merely allege human waste was present in his cell. Instead, he alleges his paraplegia and additional injuries prevented him from cleaning himself, and the jail's deprivation of adequate assistance to the toilet and shower caused him to lie in his vomit and feces for lengthy periods of time. ECF No. 1 ¶¶ 39, 63–64, 83.

Cloninger's allegations are significant because he claims that an actual injury resulted from these conditions. Because an injury is essential to an Eighth Amendment claim, courts will dismiss claims challenging conditions of confinement that do not allege an injury. *See Strickler*, 989 F.2d at 1380–81. For example, in *Powell v. Federal Bureau of Prisons*, the court dismissed the plaintiff's conditions of confinement claim, in part, because she failed to allege a significant injury resulting from her cell being "saturated with the fumes of feces, the smell of urine and vomit." No. 1:08-CV-00199, 2009 WL 3160124, at *4 (S.D.W. Va. Sept. 25, 2009). But here, Cloninger alleges that being deprived of toilet access and being forced to lie in his feces further deteriorated the broken skin on his buttocks. ECF No. 1 ¶¶ 47, 64. Exposure to the feces also created a plausible risk of additional harms, including infection.

In response, Harvey, Robinson, and Thiessen argue Cloninger's allegations are insufficient because Cloninger was only detained for a short period of time. ECF No. 12, at 8–9. The Supreme Court has explained that the length of exposure to the challenged conditions is a relevant factor

-12-

because certain conditions "might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978). Here, Cloninger alleges he was detained for approximately twenty-one days, and he spent much of this time at the hospital, where he was taken for treatment five separate times. Exposure to certain conditions for this relatively short period of time might be insufficient for an Eighth Amendment claim. *See, e.g., Wagner v. Warden*, No. ELH-14-791, 2015 WL 1276749, at *41 (D. Md. Mar. 19, 2015) (finding no constitutional violation where prisoner alleged he was placed in a cell for a month without a mattress, toiletries, or running water). However, a plaintiff's length of exposure to the challenged conditions is not determinative and should not automatically negate the more significant element of whether the conditions led to a serious injury or risk of injury. Although Cloninger's length of exposure was relatively short, he alleges this time was sufficient to cause bodily injury. The Court therefore finds Cloninger sufficiently pled a serious deprivation of a basic human need.

The Complaint also plausibly shows jail personnel were deliberately indifferent to Cloninger's inadequate access to the toilet and exposure to feces. *See Strickler*, 989 F.2d at 1379. Cloninger alleges that despite complaining of severe pain while defecating in his bed on June 20, the jail did not transport him to the emergency room until the following morning. ECF No. 1 ¶¶ 64–67. A medical report allegedly states that Cloninger was moaning in pain for ten hours before emergency medical services arrived. *Id.* ¶ 68. Thiessen's alleged comment that Cloninger went to the hospital "for a tummy ache" also suggests Thiessen and other jail personnel minimized Cloninger's condition and his risk of injury. *Id.* ¶ 70. Moreover, the incident report's alleged note that "[t]his can't happen, need to educate staff" is a significant internal criticism indicating jail personnel were indifferent to Cloninger's health and conditions of confinement. *Id.* ¶ 71. Together, these allegations adequately support the second prong of the Eighth Amendment standard.

As with Count One, the allegations underlying Count Two fail to distinguish between the various defendants, except for Thiessen's "tummy ache" comment. *See id.* ¶ 70. The Court concluded in its discussion of Count One that it would be unfair and implausible to attribute Cloninger's treatment-related allegations to the defendant correctional officers because their duties generally do not involve the medical treatment of detainees. However, the Court may fairly attribute the allegations underlying Count Two to the correctional officers because their duties generally involve ensuring detainees receive certain minimal conditions of confinement. The Court therefore denies the Motion to Dismiss as to Count Two. Count Two remains operative as to all defendants.

## C.  Count Three fails to state a claim under the Americans with Disabilities Act.

Count Three alleges the defendants violated the ADA by denying Cloninger full and equal treatment because of his disability. ECF No. 1 ¶¶ 105–112. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. State prisons are public entities under Title II. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). To state a Title II claim, Cloninger must plausibly allege: (1) he has a disability; (2) he is otherwise qualified to receive the benefits of a public service, program, or activity; and (3) he was denied the benefits of that service, program, or activity, or otherwise discriminated against, on the basis of his disability. *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016).

Cloninger failed to plausibly allege the defendants excluded him from a service, program, or activity, or otherwise treated him differently, because of his disability. To support his claim, he merely plugged his name into five prohibited actions outlined in ADA regulations. *See* ECF No. 1

¶ 110; 28 C.F.R. § 35.130(b). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted). The Complaint does contain extensive allegations of inadequate medical treatment, but allegations of inadequate care are insufficient for an ADA claim if the plaintiff does not show he was treated differently because of his disability. *See, e.g., Gordon v. Tygart Valley Reg'l Jail*, No. 3:12-CV-34, 2013 WL 786471, at *4 (N.D.W. Va. Mar. 1, 2013) (dismissing plaintiff's ADA claim because he merely alleged "inadequate care in light of his disability" not that "he was excluded from participation in a program or activity, or otherwise discriminated against, on the basis of his disability"); *Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 596 (S.D.N.Y. 2010) ("[T]he bare allegation of inadequate medical care, even when made by a person with a serious disability, does not state a claim under the ADA."); *Nails v. Laplante*, 596 F. Supp. 2d 475, 481–82 (D. Conn. 2009) (concluding the plaintiff failed to present an ADA claim based on inadequate medical care because the complaint "does not include any non-conclusory allegations of discriminatory animus or ill will based on his disability and identifies no program he could not participate in or any service that was denied as a result of his disability"). The Complaint only alleges that Cloninger was not properly treated *for* his disability, not that he was mistreated *because of* his disability. The Court therefore dismisses Count Three as to all defendants.

**D. Harvey, Robinson, and Thiessen are not entitled to dismissal based on qualified immunity.**

To the extent the Court finds Cloninger stated a claim against them, the defendants argue they are entitled to dismissal on the basis of qualified immunity. ECF No. 12, at 12–15. Broadly speaking, "[q]ualified immunity shields government officials from civil damages liability unless [1] the official violated a statutory or constitutional right [2] that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). For a right to be

clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citation omitted).

Only Count Two remains against Harvey, Robinson, and Thiessen, and they are not entitled to qualified immunity for this claim. As explained in the discussion of Count Two, the alleged facts taken in the light most favorable to Cloninger state a claim for unconstitutional conditions of confinement in violation of the Fourteenth Amendment. The first prong of the qualified immunity analysis is therefore met. As for the second prong, the Fourth Circuit has held "[a] prisoner's right to . . . freedom from deliberate indifference to medical needs has been clearly established by the Supreme Court and this Circuit since at least 1976 . . . ." *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016) (citations omitted). Cloninger characterizes Count Two as a conditions of confinement claim rather than an inadequate medical care claim, but the supporting allegations all involve the jail's inadequate response to his special needs as a paraplegic. Violation of Cloninger's clearly established right to paraplegia-related care, including assistance with bathing and using the toilet, is not shielded by qualified immunity, and Cloninger succeeded in alleging such a violation here. The Court therefore denies the claim of qualified immunity for the purposes of this Motion. *See also Hammonds v. Wolfe*, No. 3:18-1377, 2020 WL 1243609, at *7–8 (S.D.W. Va. Mar. 13, 2020) (denying qualified immunity because the plaintiff adequately alleged deliberate indifference to his medical needs); *Jeffers v. W. Va. Div. of Corr. & Rehab.*, No. 3:19-0462, 2020 WL 521851, at *6–7 (S.D.W. Va. Jan. 31, 2020) (holding the same); *Langley v. Arresting Officer*, No. 3:17-3520, 2018 WL 4560208, at *4 (S.D.W. Va. Sept. 21, 2018) (holding the same).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss, ECF No. 11. Count One is dismissed as to Harvey, Robinson, and Thiessen

but operative as to the remaining defendants. Count Two remains operative as to all defendants, and Count Three is dismissed as to all defendants. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER:          May 20, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE